[No. 19687–1–I.   Division One.   June 6, 1988.]

HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES, LOCAL 8, ET AL, *Appellants,* v. GLEN JENSEN, ET AL, *Respondents.*

*John Burns* and *Hafer, Price, Rinehart & Schwerin,* for appellants.

*Clifford D. Sethness* and *Lane, Powell, Moss & Miller,* for respondent Jensen.

*Richard J. Omata, Philip A. Talmadge,* and *Karr, Tuttle, Campbell,* for respondents Lubag, et al.

WINSOR, J.—Hanny Leutsch and the Hotel Employees and Restaurant Employees Local 8 (hereinafter Union), filed a complaint against a number of defendants alleging tortious interference with contract and business expectancy. The trial court granted defendants' motion dismissing the claim for lack of jurisdiction. The Union appeals the dismissal. Several respondents move under RAP 9.11 for consideration of new evidence on review.

Leutsch is a member of the Union and was an employee at Blaze's Broiler, a restaurant owned and operated by Jensen's Restaurant Enterprises, Inc. Respondent Glen Jensen is the sole shareholder and general manager of Jensen's Restaurant Enterprises.

Prior to 1986 the Union had a collective bargaining agreement with Jensen's Restaurant Enterprises. The most recent contract expired in July 1986. Between June and August of 1986, Blaze's Broiler and the Union negotiated in

an unsuccessful attempt to reach a new collective bargaining agreement. The Union struck the restaurant on August 18. On August 25, Jensen informed the Union that he was closing the restaurant and did so on August 28. Jensen has been out of business at the Broiler since that date.

In August and September 1986, the Union filed charges with the National Labor Relations Board (NLRB), claiming that Jensen's Restaurant Enterprises violated the National Labor Relations Act (NLRA) in not reaching a new collective bargaining agreement with the Union and by later going out of business.

On October 31, 1986, after investigating the charges the NLRB advised the Union that it was refusing to issue a complaint due to insufficient evidence of a violation of the NLRA.

Respondent Felsamli, Inc., employs respondents Lubag, Ordonia, and Lock. Felsamli purchased the assets of Blaze's Broiler from Jensen's Restaurant Enterprises and reopened the establishment as the Shilshole Broiler. Felsamli declined to engage in negotiations with the Union concerning a collective bargaining agreement.

On October 8, 1986, Leutsch and the Union filed a complaint in court for damages for tortious interference with contract and business expectancy against the respondents. The complaint alleged that the respondents acted in concert to transfer the restaurant from one corporation to a new corporation and that respondents acted intentionally to interfere with the relationship between plaintiffs and Blaze's Broiler. The alleged interference eliminated the job formerly held by Leutsch and her expectancy of continued employment, and the Union's expectancy of a new contract with the restaurant.

On December 11, 1986, the trial court dismissed the complaint, holding that exclusive jurisdiction over the subject matter of the complaint rested with the NLRB. Plaintiffs seek review by this court.

After the court's dismissal of the complaint, the Union filed a charge against the Shilshole Broiler alleging unfair

labor practices. The NLRB investigated the claim and again refused to issue a complaint in the matter due to insufficient evidence. On June 18, 1987, Felsamli, Lubag, Ordonia, and Lock moved in this court for an order permitting the introduction of this evidence on review pursuant to RAP 9.11. On June 26, 1987, a court commissioner denied the motion without prejudice. Felsamli renewed the motion in this appeal.

### PREEMPTION

The Union first contends that the trial court erred in dismissing its state claim due to lack of jurisdiction. This court reviews the determination of jurisdiction de novo. *See Lumber Prod. Indus. Workers, Local 1054 v. West Coast Indus. Relations Ass'n,* 775 F.2d 1042, 1047 (9th Cir. 1985).

The NLRB possesses exclusive jurisdiction over conduct that is arguably protected or prohibited by the NLRA. *San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 242–45, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959); *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 90 L. Ed. 2d 389, 403, 106 S. Ct. 1904 (1986). Both state and federal courts must defer to the exclusive competence of the NLRB. *Garmon,* 359 U.S. at 245.

The critical determination for preemption purposes is whether a state or federal claim involves an identical controversy to that which could have been brought before the NLRB. *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters,* 436 U.S. 180, 197, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978). The decision to preempt state or federal jurisdiction over a class of cases depends on the nature of the particular interest being asserted and the effect upon the administration of national labor policies of permitting the court to proceed. *Sears, Roebuck & Co.,* at 188–89. Preemption is inappropriate where the conduct at issue is only a peripheral federal concern under the NLRA or if it involves a significant state interest that weighs so heavily by comparison to the NLRB's interest in exercising exclusive jurisdiction that congressional interest to deprive the

state of its power cannot be inferred. *Sears, Roebuck & Co.*, at 188–89; *see also Garmon*, 359 U.S. at 243–44.

The Union contends that the court has jurisdiction over its action because, in order for the claim to fall within the *Garmon* preemption line of cases, the NLRA must cover both the conduct at issue and the parties to the action. The Union maintains that in this case neither the conduct nor the parties are covered. Respondents contend that preemption turns only upon the parties' conduct, which is covered by the NLRA in the instant case.

## Conduct

The Union argues that its claim is not preempted under the *Garmon* line of cases. According to the Union, the elements necessary to establish its claim, which requests damages for tortious interference with contract and business expectancy, are not identical to the elements necessary to establish a claim before the NLRB for unfair labor practices. Moreover, there is no provision in the NLRA, the Union contends, protecting the conduct of the respondents, and the State has a substantial interest in protecting its citizens from such conduct.

Respondents answer that the claim involves an identical controversy to a claim that could be brought before the NLRB. Respondents cite extensive authority in which actions for tortious interference with a contract were preempted.

■ Setting aside for the moment the questions of whether the *parties* are subject to the NLRA, the Union's claim of tortious interference is normally encompassed by the NLRA and hence is preempted under *Garmon*.[1] It is

---

[1]Preemption under the *Garmon* line of cases concerns conduct arguably protected under section 7 of the NLRA, 29 U.S.C. § 157 (1982), or arguably prohibited under section 8, 29 U.S.C. § 158 (1982). Section 7 of the NLRA, titled "Right of employees as to organization, collective bargaining, etc.", states:

Employees shall have the right to self–organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the

well settled that a state claim of tortious interference with an employment contract is preempted by the NLRA.

The Court ruled in *Local 207, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Perko,* 373 U.S. 701, 10 L. Ed. 2d 646, 83 S. Ct. 1429 (1963), that Perko's common law cause of action for tortious interference with his employment contract was preempted by the NLRA. While acting as a superintendent Perko violated a Union rule. The Union suspended him and told his employer that Union members would no longer take orders from him. The employer consequently discharged him several weeks later. The Court concluded that Perko's common law action was preempted because it was founded on conduct that was arguably within the ambit of section 7 or 8 of the NLRA.

In *Local 926, Int'l Union of Operating Eng'rs v. Jones,* 460 U.S. 669, 75 L. Ed. 2d 368, 103 S. Ct. 1453 (1983), a supervisor who had been discharged by his employer at the request of a union filed section 8 charges with the NLRB against the union. The NLRB dismissed the charge for lack of evidence. The employee then sued the union in state court, alleging that the union had tortiously interfered with his employment contract with the company. The Court,

---

right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

Section 8, titled "Unfair labor practices", states in pertinent part:

(a) . . .

It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . .

(5) to refuse to bargain collectively with the representatives of his employees . . .

. . .

(d) . . .

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement . . .

citing *Perko,* agreed with the respondent that Jones' claim for tortious interference was preempted.

*Lumber Prod. Indus. Workers, Local 1054 v. West Coast Indus. Relations Ass'n, supra,* involved facts similar to those of the present case. The Union had represented employees at the Nord Co. for over 25 years, during which period Nord and the Union entered into a series of collective bargaining agreements that governed the terms and conditions of employment. After the expiration of the most recent agreement, which did not contain provisions that it was to remain in effect after its expiration during negotiations for a new contract, Nord retained labor consultants to negotiate a new contract.

The negotiations were unfruitful. The Union initiated a strike against Nord and filed an unfair labor practice claim with the NLRB, alleging bad faith bargaining in violation of sections 8(a)(1) and (5) of the NLRA (29 U.S.C. § 158). The Board dismissed the complaint after determining that there was insufficient evidence of bad faith to support the charge.

The Union then filed an action in a Washington State court against the labor consultants, alleging that the consultants had deliberately and maliciously interfered with the Union's prospective contractual relationship. The consultants removed the action to federal district court and filed a motion to dismiss, contending that the complaint was based on conduct that arguably constituted bad faith bargaining and that was hence within the exclusive jurisdiction of the NLRB.

The court interpreted *Jones* as standing for the proposition that "if a crucial element of a state court action is identical to an element of an unfair labor practice that is arguably covered by the NLRA, then the state action is preempted." *West Coast,* at 1048. The court then noted that in its case the Union was reasserting the same set of facts that it relied on in its unsuccessful unfair labor practice claim, but this time directed at the consultants. *West Coast,* at 1048. The Union argued there was no preemption

because "the labor consultants were acting as independent third parties when they induced Nord to terminate its collective bargaining relationship with the union and the tort was completed prior to any negotiations in which the labor consultants might have been acting as Nord's agents." *West Coast,* at 1049.

The court rejected the Union's argument. Citing Washington case law the court observed: "One of the essential elements of the union's claim is that the labor consultants' improper interference caused the termination of the collective bargaining relationship between Nord and the union." *West Coast,* at 1049. The court continued:

> In order for the district court to determine if the union met its burden of proof as to causation, the court would have to examine the fundamental bargaining activities of Nord and the union. . . . *[T]he conduct which constitutes an essential element of the union's state law action is the very same conduct that the Board considered in rejecting the union's unfair labor practice claims.*

(Italics ours.) *West Coast,* at 1049. Since the conduct the Union relied upon to prove a crucial element in its state action was conduct that was arguably covered by the NLRA, the court ruled that the state claim was preempted. *West Coast,* at 1049.

The *West Coast* court also rejected the Union's contention that, even if the consultants' conduct was arguably prohibited under the NLRA, the state's interest in preventing tortious interference with a contract expectancy warranted retention of state jurisdiction under the significant state interest exception to the general rule of exclusive jurisdiction, see *supra.* The court noted that in *Jones* the Supreme Court

> held that state claims based on intentional interference with contractual relations are not "so deeply rooted in local law that [the state's] interest in enforcing that law overrides the interference with the federal labor law that prosecution of the state action would entail." 460 U.S. at 683.

*West Coast,* at 1049.

For other cases holding that state law claims for tortious interference with employment or contractual relations are preempted by the NLRA, see *Satterfield v. Western Elec. Co.,* 758 F.2d 1252 (8th Cir. 1985); *Local 1316, Int'l Bhd. of Elec. Workers v. Superior Contractors & Assocs., Inc.,* 608 F. Supp. 1246 (N.D. Ga. 1985).

In the case before us the Union has not distinguished persuasively the authorities in which preemption was found. Furthermore, it has cited only one case holding that a state law claim for tortious interference is not preempted (where the parties were arguably subject to the NLRA). In *Rodriquez v. Bar–S Food Co.,* 539 F. Supp. 710 (D. Colo. 1982), the complaint alleged that the Bar–S Co. had engaged in tortious acts causing the plaintiffs' damages before it became their employer. The district court, without analysis and ignoring the weight of authority to the contrary, held that "[t]his cause of action is only peripherally related to matters within the NLRB's exclusive jurisdiction and therefore may be heard by this court." *Rodriquez,* at 717. Given the lack of discussion of the issue and the holding that is contrary to *Jones* and other cases, we do not find this holding of *Rodriquez* persuasive.

The Union acknowledges that an essential element of its claim is the intentional interference by respondents leading to the termination of the collective bargaining relationship. *See Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 92, 639 P.2d 825 (1982). This is the element identified in *West Coast* that precipitated preemption. 775 F.2d at 1049. This element would require the trial court to inquire into the fundamental bargaining activities of the Union and the employer, the same conduct that the NLRB would consider. *See* 775 F.2d at 1049. In light of this common element and the weight of authority, particularly *West Coast,* we hold that the conduct intrinsic to the Union's state law claim for tortious interference with contract and business expectancy is within the exclusive jurisdiction of the NLRB.

## PARTIES

The Union contends that respondents Felsamli, Lubag, Ordonia, and Lock (Felsamli) were not employers nor were they involved in collective bargaining with the Union at the time of their alleged tortious acts; hence the claim against Felsamli is not subject to the NLRA.

Respondents answer that it is immaterial under the NLRA whether or not they were employers at the time of the allegedly tortious conduct. Rather, only their conduct is relevant for the purpose of determining preemption.

We hold that the parties' status is material to the determination of preemption under the NLRA. Only certain parties are subject to the prohibitions and protections of the NLRA. Preemption under the *Garmon* line of cases concerns conduct arguably protected under section 7 of the NLRA, 29 U.S.C. § 157 (1982), or arguably prohibited under section 8, 29 U.S.C. § 158 (1982). Section 7 details the rights of employees; section 8 prohibits certain conduct on the part of employers, employees, and labor organizations.[2] Under the language of the act, no other party is subject to its proscriptions.

In *Hudgens v. NLRB*, 424 U.S. 507, 47 L. Ed. 2d 196, 96 S. Ct. 1029 (1976), the Supreme Court was faced with a situation where the NLRB had found a violation of the NLRA committed by a party that did not employ any of the injured employees. Nevertheless, rather than determining that the Board had jurisdiction based solely on the conduct at issue, the Court deemed it necessary to determine whether the party was an employer under the act. In *Hudgens,* the warehouse employees of a company that operated a retail store located in a shopping mall owned by Hudgens went on strike against their employer and picketed the retail store on mall property. Hudgens, the mall owner, threatened to arrest the picketers if they refused to leave the property. The Union filed an unfair labor practice charge with the NLRB against Hudgens, alleging violation

---

[2]See footnote 1.

of section 8(a)(1) of the act. The Board upheld the charges and Hudgens petitioned for review.

The Supreme Court held, *inter alia,* that the rights and liabilities of the parties were dependent exclusively upon the NLRA and the jurisdiction of the Board. Although pre-emption was not an issue in *Hudgens,* the Court had to determine whether the action was covered by the act since the NLRB had found that Hudgens violated section 8(a)(1). The Court observed:

> Section 8(a)(1) makes it an unfair labor practice for "an employer" to "restrain, or coerce employees" in the exercise of their § 7 rights. While Hudgens was not the employer of the employees involved in this case, it seems to be undisputed that he was an employer engaged in commerce within the meaning of §§ 2(6) and (7) of the Act, 29 U. S. C. §§ 152(6) and (7). The Board has held that a statutory "employer" may violate § 8(a)(1) with respect to employees other than his own.

*Hudgens,* 424 U.S. at 510 n.3 (citing *Austin Co.,* 101 N.L.R.B. 1257, 1258–59 (1952)). *See also Operating Eng'rs Local 3, Int'l Union of Operating Eng'rs v. NLRB,* 266 F.2d 905 (D.C. Cir. 1959), in which the circuit court, in rejecting the contention that there can be no unfair labor practice where the employer's discriminatory action is against employees other than those of the employer, applied the broad statutory definition of employer later relied upon in *Hudgens* rather than finding that the status of the parties was immaterial, as Felsamli contends. 266 F.2d at 909.

We hold that only those parties named in the act, *i.e.,* employers, employees and labor organizations, are subject to the act and the jurisdiction of the NLRB. However, despite the ostensibly narrow language of the act, the Board has been accorded broad jurisdiction over parties committing unfair labor practices. In furtherance of the overriding interest in developing a uniform, nationwide interpretation of the NLRA by a centralized expert agency, *i.e.,* the NLRB, *see, e.g., New York Tel. Co. v. New York Dep't of Labor,* 440 U.S. 519, 527–28, 59 L. Ed. 2d 553, 99 S. Ct. 1328 (1979); *Garmon,* 359 U.S. at 245, courts have

strained to find Board jurisdiction in cases involving unfair labor practices where it was far from clear that all of the parties were subject to the act. In *Hudgens* and *Operating Eng'rs, Local 3, Int'l Union of Operating Eng'rs v. NLRB, supra,* for example, in order to find jurisdiction the courts held that an employer under the act need never have employed the employees in the action.

In *Local 926, Int'l Union of Operating Eng'rs v. Jones, supra,* the Supreme Court found the action was preempted even though the injured party was apparently excluded from the protection of the act. Jones was a supervisor who was discharged by his employer in response to the demands of a union. Jones filed a charge with the NLRB against the union, alleging that the union had procured his discharge and had coerced the employer in the selection of its supervisors and bargaining representatives in violation of section 8(b)(1)(A) and (B) of the NLRA. The Board refused to issue a complaint, concluding there was insufficient evidence to support the charges. Jones filed a state action, which was dismissed as preempted.

On appeal the Supreme Court held that the action was preempted even though supervisors generally are expressly excluded from the definition of "employee" under the act. 29 U.S.C. § 152(3). In finding that the action was preempted the Court went to great length to discern some arguable injury from the union's activities to employees, to Jones in a supervisory role covered by the act, and to the employer. *Jones,* 460 U.S. at 678–80.

*Local 207, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Perko,* 373 U.S. 701, 10 L. Ed. 2d 646, 83 S. Ct. 1429 (1963), involved a similar situation in that the Court found the action was preempted even though the injured party was a supervisor. Preemption in *Perko* rested on whether the unfair labor practice committed by the union injured anyone who arguably was entitled to claim the protection afforded employees under the act. 373 U.S. at 706. Although Perko was employed as a supervisor when his employer discharged him "'due to his dispute with the

union,'" 373 U.S. at 704, the Court found for preemption on three grounds: (1) that his role at work had fluctuated between that of a supervisor and a foreman, and a foreman is arguably an employee under the act, 373 U.S. at 706–07; (2) the union's conduct could have had a coercive effect on other employees, 373 U.S. at 707; and (3) the conduct may have violated the employer's rights under the act by coercing it in the selection of its representatives for purposes of collective bargaining and grievance adjustments, 373 U.S. at 708.

The court in *Lumber Prod. Indus. Workers, Local 1054 v. West Coast Indus. Relations Ass'n, supra,* held that a state claim was preempted even if the court accepted the argument of the party opposing preemption that the defendant labor consultants were not employers. 775 F.2d at 1049. We concur with the court's finding of preemption although we are troubled by the analysis. The court relied upon *Jones* and *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters,* 436 U.S. 180, 197, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978), to support its conclusion. In neither of these cases, however, did the Court hold that the status of the parties was immaterial to the determination of preemption. Rather, the *Jones* Court found there were injuries to arguably protected parties, and in *Sears,* the action was brought by an employee against a labor organization. Nevertheless, *West Coast* is consistent with the national policy of promoting the NLRB as the primary arbiter of labor disputes.

In the case before us, the complaint was brought against two groups of parties. Respondent Jensen is subject to the act. As the sole shareholder and general manager of Jensen's Restaurant Enterprises, d/b/a Blaze's Broiler, he was an employer subject to the NLRA. Furthermore, prior to filing this action in court, the Union filed two charges against Jensen's Restaurant Enterprises with the NLRB, alleging unfair labor practices based in part on the same conduct at issue here. The NLRB assumed jurisdiction,

then reviewed the charges on their merits and declined to issue a complaint.

In light of Jensen's status as an employer, that his alleged conduct is arguably covered by the NLRA, see *supra,* and that the NLRB exercised jurisdiction over Jensen's Restaurant Enterprises, we hold that the trial court did not err in ruling that the claim against Jensen was preempted and in dismissing him from the action.

Respondent Felsamli, on the other hand, presents a more difficult case. It did not present any evidence to the court concerning its status under the NLRA. The Union asserts that Felsamli was not an employer at the time of the allegedly tortious conduct. As the party claiming preemption, Felsamli has the burden of showing at least an arguable case before the jurisdiction of a state court will be precluded. *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 90 L. Ed. 2d 389, 396, 106 S. Ct. 1904 (1986). Nevertheless, in consideration of the policy favoring preemption we find that Felsamli is an employer under the act.

The definition of "employer" is very broad. An employer is anyone who owns, or who engages in operating for him or herself, a business having employees. *NLRB v. New Madrid Mfg. Co.,* 215 F.2d 908, 913 (8th Cir. 1954). An employer, to be subject to the jurisdiction of the NLRB, need not have a direct relationship to the employees involved in the action. *See Hudgens v. NLRB, supra.* An employer may commit an unfair labor practice by impairing the section 7 rights of any employee. *Compare* 29 U.S.C. § 152(3) *with* 29 U.S.C. § 157. In cases where the determination of the status of parties is difficult, courts should defer to the NLRB. *Perko,* 373 U.S. at 706.

We hold that, for the purposes of determining jurisdiction under the act, the definition of employer encompasses those who act in concert with an employer to commit an unfair labor practice. Such an expansive definition is consistent with the policy of deferring to the expertise of the Board in furtherance of developing a uniform national labor policy. Moreover, this definition, by allowing this

court to affirm preemption of the claim against Felsamli in addition to Jensen, furthers a just result and promotes judicial economy. It would be both unjust and inefficient to allow this single action to be split on the basis of the status of the parties, with the claim against Jensen left to the exclusive jurisdiction of the Board and the claim against Felsamli to be tried in state court, when the claims and the alleged conduct are identical. Allowing such a division could ultimately produce an unwanted separate and distinct body of state labor law. We wish to avoid this result.

The complaint in the present case alleges that Felsamli acted in concert with Jensen to tortiously interfere with the appellants' contract and employment expectancies. Although Felsamli has not provided this court with a record on its status as an employer, we find that Felsamli is arguably an employer for having acted in concert with Jensen to commit allegedly proscribed conduct, and therefore the action against Felsamli is preempted by the NLRB's exclusive jurisdiction.

## RAP 9.11

Felsamli has moved this court for an order permitting the introduction of additional evidence on review pursuant to RAP 9.11. Felsamli argues that the evidence satisfies the requirements of RAP 9.11 and should be considered by this court. The Union does not resist the motion.

We grant the motion because of the Union's acquiescence. However upon consideration we do not find the evidence to be material to this case, as it contains allegations exclusively of actions occurring after November 1, 1986, which postdate the filing of this complaint.

## FRIVOLOUS APPEAL

Respondents assert that the Union's appeal of the dismissal of the claim against them is frivolous. When an appellant files a frivolous appeal, the respondent is entitled to sanctions and attorneys' fees pursuant to RAP 18.9. An appeal is frivolous if, considering the record as a whole and resolving all doubts in favor of the appellant, the court is

convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 506–07, 716 P.2d 869 (1986).

■ The appeal taken by the Union of the dismissal of the claim is not frivolous. Preemption of a state law claim under the *Garmon* line of cases requires that the conduct and the parties both be arguably subject to the NLRA. Although it is well established that respondents' conduct is arguably covered by the NLRA, the Union has cited a case, *Rodriquez v. Bar–S Food Co.*, 539 F. Supp. 710 (D. Colo. 1982), supporting the contrary position.[3] Although we do not find *Rodriquez* persuasive on that issue, the case precludes a finding that the appeal was totally devoid of merit.

We affirm the dismissal of the claim. We also grant respondents' RAP 9.11 motion for consideration of new evidence on review and deny their requests for attorneys' fees.

COLEMAN, A.C.J., concurs.

WILLIAMS, J. (concurring in part, dissenting in part)— The appeal is frivolous. *Rodriquez v. Bar–S Food Co.*, 539 F. Supp. 710 (D. Colo. 1982), a federal district court memorandum opinion and order, adds no substance to the well settled principles established by the case authorities, including those cited and discussed by the majority opinion. Moreover, the unsupported conclusion in that case that a cause of action could be maintained against Bar–S for tortious acts committed before becoming an employer does not apply; Jensen was an employer at the time of the

---

[3]The Union also cites a pre-*Garmon* Washington case in which a similar state claim was not preempted. However, as a pre-*Garmon* case it has no precedential value on preemption issues. The Union arguably concedes this by its failure to cite the case in its discussion on preemption. Rather, the Union mentions the case only in its discussion concerning the frivolous appeal issue.

alleged interference and appellants claim all respondents were acting in concert.

I would tax appellants for attorney fees and costs pursuant to RAP 18.9.