FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8:48

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In re the Matter of the Marriage of: | No. 46824-7-II |
| LA SHANDRE NICHELE BENT, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| MICHAEL ST. GEORGE BENT, | |
| Appellant. | |

MELNICK, J. — Michael Bent appeals the trial court's orders[1] entered following a dissolution action. He raises many constitutional arguments, most of which seem to involve the parenting plan's residential provisions and the trial court's relocation order permitting La Shandre Bent's relocation to Florida with their children. We hold that Michael's constitutional arguments are meritless and that the trial court did not abuse its discretion when it established the parenting plan's residential provisions and granted La Shandre's relocation petition. We affirm.

**FACTS**

La Shandre and Michael Bent[2] married on June 29, 1991, and separated on June 10, 2013. They have two dependent children who were ages 14 and 11 at the time of separation.

---

[1] Bent's brief is difficult to understand and he does not make clear which trial court orders he is appealing.

[2] To avoid confusion, we refer to the parties by first name throughout the remainder of this opinion. We intend no disrespect.

La Shandre filed for dissolution.[3] On June 10, 2013, the trial court granted La Shandre a temporary restraining order against Michael and issued an order to show cause. After the show cause hearing, the trial court entered a temporary order establishing family support and it also entered a temporary restraining order against Michael, allowing only supervised visitation with the children. The trial court also ordered Michael to undergo a full psychological exam.

Michael moved the trial court to amend the temporary restraining order, appoint a guardian ad litem, order a psychological assessment of La Shandre, and order a bilateral child custody evaluation. Following a hearing, the trial court ordered that Michael's visitation with the children shall no longer be supervised and appointed Dr. Landon Poppleton to perform a bilateral child custody evaluation. The trial court denied the remainder of Michael's motions.

Dr. Poppleton began the evaluation in November 2013. "[T]he original focus of the evaluation was strictly on [Michael] and what amount of parenting time his disposition approach would be able to sustain." I Report of Proceedings (RP) at 94. But after La Shandre filed a notice of intent to relocate to Florida, Dr. Poppleton performed psychological testing on La Shandre.

On June 23, 2014, Dr. Poppleton completed a bilateral child custody evaluation and issued a report. Dr. Poppleton concluded that a difficult dynamic exists between La Shandre and Michael, which "does not bode well for joint decision making." Ex 2, at 24. Dr. Poppleton concluded that both children demonstrated a good relationship with each parent and that La Shandre had been the primary parent, carrying the demands of day-to-day parenting. Dr. Poppleton also investigated the issue of La Shandre's intent to relocate to Florida. Dr. Poppleton reviewed each RCW 26.09.520

---

[3] The record on appeal does not contain La Shandre's petition for dissolution; however, the parties agree that La Shandre filed for dissolution. La Shandre asserts that she filed for dissolution on June 10, 2013.

relocation factor and recommended that the trial court allow La Shandre to relocate with the children.

Trial began on July 7, 2014. The trial court heard testimony from Dr. Poppleton, La Shandre, Michael, one of Michael's coworkers, and one of Michael's extended family members. The parties presented evidence that La Shandre had been the children's primary caregiver and that she quit working, at Michael's request, after the oldest child was born. The evidence also showed that both children had a good relationship with each parent and that La Shandre carried the demands of day-to-day parenting. The trial court heard testimony regarding available familial support in Florida, as well as the children's involvement in school and extracurricular activities and the availability of those activities if the children reside primarily with La Shandre in Florida. The trial court also heard testimony regarding Michael's employment schedule.

On August 20, 2014, the trial court issued an oral ruling. The trial court found Dr. Poppleton's report and testimony to be "very instructive and reliable." VI RP at 724. On October 10, 2014, the trial court entered written findings of fact and conclusions of law, a dissolution decree, a permanent parenting plan, a child support order, and an order on objection to relocation.

The trial court designated La Shandre as the primary custodial parent[4] because, based on the testimony of Dr. Poppleton, La Shandre, and Michael, she spent the majority of the time with the children. After considering each RCW 26.09.520 relocation factor, the trial court ordered that La Shandre could relocate with the children. The trial court entered the following written findings based on the factors enumerated in RCW 26.09.520: (1) La Shandre and Michael both have a strong relationship with the children, but La Shandre has been more involved with the children's lives. (2) Although there is no agreement for La Shandre to relocate with the children, La Shandre

---

[4] RCW 26.09.285

3

and Michael had previously significantly discussed moving the family to Florida and the evidence presented supports that they agreed a move to Florida would be beneficial for the children. (3) It would be more detrimental to disrupt contact between the children and La Shandre and she will be the better parent to help the children work through changes resulting from the move to Florida than Michael. (4) Restrictions under RCW 26.09.191 do not apply. (5) La Shandre sought the relocation in good faith, and Michael objected in good faith. (6) Although there will be adjustments to new schools in Florida and negative effects of moving the children, there is no evidence of physical detriment and no detriment sufficient to rebut the presumption. (7) This factor does not apply because the quality of life in both locations is comparable. (8) The parenting plan provides an "alternate arrangement sufficient to continue the children's relationship with [Michael]." Clerk's Papers (CP) at 105. (9) This factor does not apply. (10) The financial benefits to La Shandre and the children outweigh the cost. (11) The trial court did not consider this factor because it was making a final decision.

The trial court ordered that when La Shandre and the children moved to Florida, Michael would have parenting time during the school year of one visit every three months in Washington, including the children's winter and spring breaks. Additionally, the trial court ordered that Michael would be entitled to one visit per month in Florida that would equate to a standard weekend of two overnights. Furthermore, the trial court awarded Michael 60 percent of the summer break in one block of time. The trial court scheduled holidays between the parents in alternating even and odd years.

Michael appeals.

## ANALYSIS

I. SELF-REPRESENTED LITIGANT AND ASSIGNMENTS OF ERROR

Michael first requests us to overlook "any formatting or procedural oversights" in his appeal because he is a self-represented litigant (SRL). Br. of Appellant at 10. SRL's are held to the same standard as attorneys and must comply with all procedural rules on appeal. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). We reject Michael's request.

RAP 10.3(a)(4) & (g) requires separate assignments of error for each of the trial court's contested factual findings. Because Michal failed to assign error to any of the trial court's factual findings, we treat them as verities on appeal. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

II. PRESUMED CONSTITUTIONALITY OF STATUTES

Michael requests "a Declaratory Judgment clarifying Washington's Courts' holding on presumed constitutionality of civil statutes." Br. of Appellant at 13. Notwithstanding that a declaratory judgment is not appropriate in this forum, the case law in this area is very clear: courts presume that statutes are constitutional and the burden to show unconstitutionality is on the challenger. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015); *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006); *In re Marriage of Johnson*, 96 Wn.2d 255, 258, 634 P.2d 877 (1981). We reject Michael's request for a declaratory judgment.

III.   MICHAEL'S CONSTITUTIONAL ARGUMENTS LACK MERIT

A.   "Right to Parent-Child Association"—Fundamental Parental Liberty Interest

Michael argues that, although his "legal right to parentage was undisturbed," the trial court's orders violate his "right to parent-child association."[5]  Br. of Appellant at 18, 26.  It is unclear to which trial court order Michael is referring, but Michael seems to claim that the parenting plan violated his fundamental parental liberty interest.  This argument lacks merit and we reject it.

In support of his argument, Michael relies on *In re the Marriage of King*, 162 Wn.2d 378, 386, 174 P.3d 659 (2007).  But his reliance is misplaced.  In that case, our Supreme Court held that in dissolution proceedings, the trial court must balance the rights of both parents and further held that fundamental constitutional rights are not implicated as in a termination or dependency proceeding.  *King*, 162 Wn.2d at 385.  "The entry of a parenting plan effectuating the legislative purpose of continued parental involvement in the children's lives does not equate to an action where the State is seeking to terminate any and all parental rights and parental involvement with the children, severing the parent-child relationship permanently."  *King*, 162 Wn.2d at 385.  The entry of a parenting plan is a statutory requirement when children are involved in the marriage, and entry of such does not terminate either parent's parental rights.  *King*, 162 Wn.2d at 385.  Rather, it allocates parental rights to ensure that the parents may still exercise those rights.  *King*, 162 Wn.2d at 385.  "Even where a parenting plan results in [children] spending substantially more,

---

[5] Throughout his brief, Michael refers to the "County."  The record contains no information that any county or state agency had involvement in this case.  Additionally, from the context of some of Michael's arguments, he seems to use "County" to refer to the trial court.  We do our best to address all of his arguments.

or even all, of . . . [their] time with one parent rather than the other, both parents remain parents and retain substantial rights, including the right to seek future modification of the parenting plan." *King*, 162 Wn.2d at 386; RCW 26.09.260.

This case is a dissolution proceeding with a parenting plan, not a termination or dependency proceeding. The state is not a party to the proceedings and had no say in determining how La Shandre's and Michael's residential time was divided. Michael provides no developed argument as to why the parenting plan does not effectuate the legislative purpose of continued parental involvement. Thus, the interest at stake in this proceeding is not a fundamental parental liberty interest. We reject Michael's argument.

B.     State and Federal Equal Protection Claims

Michael next argues that a state or federal equal protection analysis should have been applied in the dissolution proceeding. Michael claims that no compelling state interest exists to justify allegedly violating his right to equal protection. For a violation of equal protection to occur, a law or its application must confer a privilege to a class of citizens. WASH. CONST., art. 1, § 12; *King*, 162 Wn.2d at 396. The privileges and immunities provision of our constitution protects "'against laws serving the interest of special classes of citizens to the detriment of the interests of all citizens.'" *King*, 162 Wn.2d at 397 (quoting *Grant County. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812, 83 P.3d 419 (2004)). Privileges and immunities refers to fundamental rights that belong to citizens of Washington. *King*, 162 Wn.2d at 397. But here, Michael fails to identify a privilege and how the dissolution statutes deny him a privilege to which he would have been entitled but for state interference. Fundamental constitutional rights are not implicated. Therefore, we reject Michael's argument.

7

Additionally, no violation occurred under a federal equal protection analysis. No state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The states must treat like cases alike." *King*, 162 Wn.2d at 397. Michael cites no case supporting his claim that the state has drawn any distinction or classification to which he is subject. In addition, the record contains no basis to conclude that the state is responsible for any classification. *See King*, 162 Wn.2d at 397. Therefore, no basis exists for Michael's claim that the state violated his constitutional rights under federal equal protection analysis. We reject this argument.

C.     Parental Autonomy

Michael next seems to argue that the parenting plan infringes on "his right to parental autonomy." Br. of Appellant at 36. But the trial court imposed no restrictions on Michael's parenting. The trial court specified that no statutory restrictions applied.[6] Furthermore, the trial court ordered that "[e]ach parent shall make decisions regarding the day-to-day care and control of each child while the children are residing with that parent" and that "either parent may make emergency decisions affecting the health or safety of the children." CP at 128. The trial court ordered that major educational and medical decisions shall be made jointly. It imposed no restrictions on decision making. Therefore, Michael's argument is without merit and we reject it.

D.     Due Process Violations

Michael next argues that the "huge financial burdens" imposed on him by the trial court's orders violated due process. Br. of Appellant at 39. Michael does not identify which of the trial court orders he challenges and provides no substantive argument regarding the property distribution, maintenance award, or child support order. "'[P]arties raising constitutional issues

---

[6] RCW 26.09.191

8

must present considered arguments to this court.' . . . '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *State v. Bonds*, 174 Wn. App. 553, 567 n.3, 299 P.3d 663 (2013) (quoting *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)) (second alteration in original) (citation omitted). We decline to consider Michael's due process argument.

E.     42 U.S.C. § 1983 Claim

Michael seems to seek relief under 42 U.S.C. § 1983, alleging that the trial court infringed on his rights. "Under 42 U.S.C. § 1983, a plaintiff may recover money damages if [he] can show that [he] has been deprived of some federal right." *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765 (1992). Although state courts have concurrent jurisdiction to hear and decide § 1983 claims, Michael never brought a claim in the trial court for deprivation of substantive due process rights or an unconstitutional taking under § 1983. *See Sintra, Inc.*, 119 Wn.2d at 11. Because there is nothing to review, we reject this claim.

III.    RESIDENTIAL PROVISIONS

Michael next seems to argue that because he is the fitter parent, the trial court's conclusion that it would be in the best interest of the children to reside the majority of the time with La Shandre is incorrect.[7] Michael fails to assign error to the trial court's finding that La Shandre is the primary

---

[7] Michael also argues that the state's "parens patriae duty obligated it to assure the Bent children were entrusted to fit parent(s)." Br. of Appellant at 28. The state was not a party in this private matter initiated by the parties. Michael's argument is unclear, misplaced, and unsupported by any legal basis; therefore, we do not consider it. *See In re Dependency of I.J.S.*, 128 Wn. App. 108, 116, 114 P.3d 1215 (2005) (The state has an obligation to intervene and protect a child from harm in a termination proceeding.).

custodial parent. He also fails to provide sufficient argument on the parenting plan. We hold that the trial court did not abuse its discretion in establishing the parenting plan's residential provisions.

A.    Standard of Review

We review a trial court's decisions about the parenting plan provisions for an abuse of discretion. *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion if the decision rests on unreasonable or untenable grounds. *Halls*, 126 Wn. App. at 606. Because the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997)). Decisions regarding residential provisions must be made in the best interests of the children after considering the factors set forth in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002).

In determining the residential provisions of a permanent parenting plan, the trial court considers the best interests of the child by analyzing seven factors identified in RCW 26.09.187(3)(a):

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions, . . . including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

The statute further specifies that "[f]actor (i) shall be given the greatest weight." RCW 26.09.187(3)(a). As long as the trial court properly considers these statutory factors, it has wide discretion in determining parenting responsibilities. *In re Marriage of Possinger*, 105 Wn. App. 326, 335, 19 P.3d 1109 (2001).

B.      The Trial Court Did Not Abuse its Discretion

Here, the trial court considered all of the evidence presented at trial and properly applied the statutory factors contained in RCW 26.09.187(3)(a). In particular, the trial found that the evidence showed the children demonstrate a good relationship with each parent and La Shandre has been the primary parent, carrying the demands of day-to-day parenting. RCW 26.09.187(3)(a)(i), (iii). The trial court acknowledged the importance of the children spending significant time with Michael at "this stage in their lives" and gave more time to Michael with the children than Dr. Poppleton recommended. VI RP at 730; RCW 26.09.187(3)(a)(iv). But the trial court also found that separating the children from La Shandre would be detrimental and determined that the children should reside primarily with her.

In making the determination that La Shandre could relocate with the children, the trial court considered testimony regarding available familial support in Florida, the children's involvement in school and extracurricular activities, and the availability of those activities in Florida. The trial court also heard testimony regarding Michael's employment and included provisions for telephone access in accordance with Michael's schedule. RCW 26.09.187(3)(a)(vii). Because the trial court based its residential provision decision on the statutory factors set forth in RCW 26.09.187(3)(a) and on the evidence presented, its decision was not based on untenable grounds or manifestly

unreasonable. Therefore, the trial court did not abuse its discretion when it established the residential provisions in the parenting plan.

V.    RELOCATION

Michael's remaining arguments seem to revolve around the trial court's decision to grant La Shandre's petition for relocation. We hold that the trial court did not abuse its discretion when it granted La Shandre's relocation petition.

A.    Standard of Review

We review the trial court's decision to grant or deny a petition for relocation for abuse of discretion. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A trial court abuses its discretion if its decision is manifestly unreasonable or based on "untenable grounds or reasons." *Horner*, 151 Wn.2d at 893 (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)). "'A [trial] court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.'" *Horner*, 151 Wn.2d at 894 (quoting *Littlefield*, 133 Wn.2d at 47).

As discussed above, generally, we review the trial court's findings of fact and conclusions of law to determine whether substantial evidence in the record supports the findings and, if so, whether the findings support the trial court's conclusions. *In re Marriage of Fahey*, 164 Wn. App. 42, 55-56, 262 P.3d 128 (2011). Unchallenged findings of fact are verities on appeal. *Tapper*, 122 Wn.2d at 402. Michael failed to assign error to any findings of fact; therefore, we treat the trial court's factual determinations as verities.

B.    Standard Under the Child Relocation Act

In 2000, the legislature passed the Child Relocation Act (CRA), RCW 26.09.405-.560, which shifts the analysis away from the best interests of the child to an analysis focusing on the best interests of the child and the relocating person. LAWS OF 2000, ch. 21, §§ 1, 14; *Horner*, 151 Wn.2d at 886-87. The CRA creates a rebuttable presumption that the relocation will be allowed, which may be rebutted when the objecting party proves that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon [11 child relocation] factors." RCW 26.09.520. The burden of overcoming the presumption is on the objecting party. *Horner*, 151 Wn.2d at 895. The factors are:

> (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
> (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
> (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
> (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
> (10) The financial impact and logistics of the relocation or its prevention; and
> (11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520.

These factors are not listed or weighted in any particular order. RCW 26.09.520; *Horner*, 151 Wn.2d at 887. The trial court must consider each of the factors and determine by a preponderance of the evidence whether these factors show that relocation would be more detrimental than beneficial, and it must make findings on the record regarding each of the factors. *Horner*, 151 Wn.2d at 895-97.

C.    The Trial Court Did Not Abuse Its Discretion

Because Michael objected to relocation, the burden shifted to him to rebut the presumption that permitted relocation. The record establishes that the trial court sufficiently considered the relocation factors; and, its findings of fact support its conclusions of law. The trial court found that factors (1), (2), (3), (6), (8), (10) weighed in favor of permitting La Shandre to relocate to Florida.[8] Because the trial court considered each factor and found that Michael did not rebut the presumption favoring relocation, its conclusion to allow La Shandre to relocate is supported by its findings. Thus, the trial court's decision to grant La Shandre's petition for relocation was neither based on untenable grounds nor manifestly unreasonable. Therefore, the trial court did not abuse its discretion when it granted La Shandre's petition for relocation.

VI.    ATTORNEY FEES

La Shandre requests attorney fees on appeal and we grant her request on two grounds. RAP 18.1 permits us to award attorney fees to a party entitled to them under "applicable law." RCW 26.09.140 allows us, in our discretion and after considering the "financial resources" of the parties, to order a party to pay the attorney fees of the other party in cases governed by chapter 26.09 RCW. We may award such fees after considering the financial need of the requesting party, the other party's ability to pay, and the arguable merits of the issues raised on appeal. *In re Marriage of*

---

[8] The trial court found that factors (4), (7), and (9) did not apply.

*Kim,* 179 Wn. App. 232, 256, 317 P.3d 555, *review denied,* 180 Wn.2d 1012 (2014). A party must timely file a financial declaration for his or her resources to be considered. RAP 18.1(c). La Shandre filed a financial declaration on March 5, 2015.

La Shandre has significant financial need, as she is currently unemployed. Her monthly net income is $3,888.33 while her expenses total $7,112.73 monthly. La Shandre's earning capacity is approximately $40,000 to $45,000 per year. Michael earns approximately $126,000 plus bonuses per year. Michael raises meritless issues. Therefore, we grant La Shandre attorney fees on appeal under RAP 18.1.

La Shandre also requests attorney fees on the ground that Michael's appeal is frivolous. RAP 18.9. Such a claim requires us to consider the following factors:

> (1) A civil appellant has a right to appeal under RAP 2.2, (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant, (3) the record should be considered as a whole, (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous, and (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White,* 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

Here, Michael's brief is inadequate to make clear which trial court orders he is appealing and he provides no argument specific to any of the orders. He raises numerous meritless constitutional issues for the first time, most of which pertain to well-settled areas of law and some of which have no bearing on this appeal. Because no reasonable minds might differ and Michael's arguments are so devoid of merit that there is no reasonable possibility of reversal, we also award attorney fees to La Shandre under RAP 18.9.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Melnick, J._

Melnick, J.

We concur:

_Worswick, J._

Worswick, J.

_Johanson, C.J._

Johanson, C.J.